IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCUS BARNES,

        Plaintiff,

v.

DEKALB COUNTY, GEORGIA and A.J.
CAMPBELL, Badge #1490, as an
Individual,

        Defendants.

CIVIL ACTION NO.

1:10-cv-0350-JEC

## ORDER & OPINION

This case is before the Court on defendants' Motion for Summary Judgment [79]. The Court has reviewed the record and the arguments of the parties and, for the reasons that follow, concludes that defendants' Motion for Summary Judgment [79] should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arose from plaintiff's arrest and imprisonment on a felony murder charge. On January 16, 2008, Rodrick Miller's body was found outside of a DeKalb County apartment building with a gunshot wound to his head. (Campbell Scene Note and Autopsy Report, attached to Statham Dep. [90] at Ex. 1.) Miller's death was declared a homicide, and DeKalb County Detective A.J. Campbell was assigned to

the investigation. (Defs.' Statement of Material Facts ("DSMF") [79] at ¶¶ 1-2.)

In the course of his investigation, Detective Campbell interviewed several people who knew and regularly associated with Miller. (*Id.* at ¶ 2.) During these interviews, Miller's fiancé Tamara Jackson allegedly informed Campbell that, on the night before the murder, plaintiff had offered to pay Miller to act as a bodyguard during a drug deal that plaintiff was planning. (Campbell Aff. [79] at ¶ 3.) Miller's friend Gregory Dennis told Campbell that on the morning of the murder, he gave Miller a ride to the apartment complex where his body was later found. (*Id.* at ¶ 4.)

Following the above interviews, Detective Campbell subpoenaed plaintiff's and Miller's cell phone records. (*Id.* at ¶ 5.) The records showed that plaintiff called Miller's cell phone around 2:15 AM and at least two other times prior to Miller's murder. (*Id.*) They also showed calls from other unknown numbers around the same time that neighbors heard gunshots on the morning of the murder. (Campbell Dep. [92] at 146-49.)

Detective Campbell subsequently called plaintiff's cell phone and left a message regarding his investigation. (Campbell Aff. [79] at ¶ 6.) Around February 26, 2008, Campbell spoke briefly with plaintiff, who refused to be interviewed about Miller's murder. (*Id.* at ¶ 7.) Thereafter, Detective Campbell obtained an arrest warrant

2

against plaintiff for felony murder in the DeKalb County Magistrate Court. (Arrest Warrant, attached to Campbell Dep. [91] at Ex. 3.) To establish probable cause for the warrant, Campbell relied on the alleged statements of Jackson and Dennis, as well as the cell phone records that he had obtained from plaintiff and Miller. (Campbell Aff. [79] at ¶ 8.)

Pursuant to the warrant, plaintiff was arrested on March 21, 2008 and held in the DeKalb County jail on a charge of felony murder. (DSMF [79] at ¶ 10.) He was released approximately 22 days later, after a probable cause hearing. (Am. Compl. [16] at ¶ 17.) In a memo explaining his recommendation to drop the charge against plaintiff, DeKalb County Assistant District Attorney Bob Statham stated that there was no probable cause to pursue plaintiff's conviction. (Statham Memo, attached to Statham Dep. [90] at Ex. 1.) He also suggested that plaintiff's arrest was motivated by plaintiff's failure to cooperate with Campbell's investigation. Plaintiff's charge was dropped on January 28, 2009. (Pretrial Disposition Notice, attached to Statham Dep. [90] at Ex. 2.)

Plaintiff subsequently filed this § 1983 action against Detective Campbell and DeKalb County, asserting a violation of his Fourth Amendment rights. (Compl. [1] and Am. Compl. [16] at ¶ 20.) According to plaintiff, Campbell obtained the arrest warrant by fabricating Jackson's statement, and in the absence of the fabricated

3

statement, defendants lacked probable cause for his arrest. (Am. Compl. [16] at ¶¶ 9, 15.) In addition to his federal claim, plaintiff also asserts state law claims for false arrest, false imprisonment and intentional infliction of emotional distress. Defendants have filed a motion for summary judgment on all of the claims asserted in the complaint. (Defs.' Mot. for Summ. J. [79].)

**DISCUSSION**

I.    **SUMMARY JUDGMENT STANDARD**

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden to show the district court, by reference to materials in the record, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If this initial burden is not satisfied, the motion must be denied and the court need not consider any showing made by the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). If the movant satisfies this initial responsibility, the nonmoving party then bears the burden to show the existence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

4

Where the nonmovant bears the burden of proof, the moving party need only show the absence of evidence to support the nonmovant's case, or affirmative evidence demonstrating that the nonmovant will be unable to prove their case at trial. *Fitzpatrick*, 2 F.3d at 1115-1116. The court must view all evidence and draw all reasonable inferences in favor of the nonmoving party. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005).

There is no "genuine" issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The substantive law will determine which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## II. **CLAIMS AGAINST DEFENDANT CAMPBELL**

### A. **42 U.S.C. § 1983**

In order to hold Campbell liable under § 1983, plaintiff must show that Campbell: (1) deprived plaintiff of a constitutional right, (2) under color of state law. *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005). Plaintiff must also overcome the qualified immunity defense. *See Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (qualified immunity offers complete protection for

5

government officials sued in their individual capacities as long as their conduct does not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known'")(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Campbell does not dispute that he was acting under color of state law when he obtained plaintiff's arrest warrant. His motion for summary judgment is based on the theory that plaintiff's Fourth Amendment claim is barred by the existence of actual or arguable probable cause for plaintiff's arrest. (Defs.' Br. in Supp. of Summ. J. ("Defs.' Br.") [79] at 9-14.) In his response brief, plaintiff contends that Campbell fabricated the evidence used to establish probable cause for the arrest. (Pl.'s Resp. Br. [85] at 3-4.) Defendants have not filed a reply brief challenging plaintiff's assertion or the evidence submitted in support of it. Their apparent acquiescence, in addition to the conflicting evidence in the record concerning probable cause, precludes summary judgment in favor of Campbell on plaintiff's § 1983 claim.

1. The Fourth Amendment Prohibits The Use Of Fabricated Evidence To Obtain An Arrest Warrant.

An arrest without probable cause clearly "'violates the right to be free from an unreasonable search [and seizure] under the Fourth Amendment.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)(quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir.

6

2003)). Likewise, "falsifying facts to establish probable cause is patently unconstitutional." *Id.* *See also Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999)("the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen"). The constitutional rule against fabricating evidence to obtain an arrest warrant has been well established in this Circuit for over two decades. *Kingsland,* 382 F.3d at 1232 (citing *Riley v. City of Montgomery,* 104 F.3d 1247, 1253 (11th Cir. 1997)("It was well established in 1989 that fabricating incriminating evidence violated constitutional rights.").

> 2. There Is A Genuine Issue Of Disputed Fact As To Whether Campbell Fabricated Evidence To Obtain Plaintiff's Arrest Warrant.

The magistrate found probable cause for plaintiff's arrest based on the following facts:

> According to [Miller's] girlfriend [plaintiff] was planning a drug deal and asked [Miller] to serve as his bodyguard for $10,000.00; [Miller] went to join [plaintiff] and was killed. Phone records show that [plaintiff] called [Miller] to meet him and gun shots heard at meeting location shortly after call.

(Arrest Warrant, attached to Campbell Dep. [91] at Ex. 3.) These facts were provided to the magistrate by Campbell, who swore to their veracity in a probable cause affidavit. (*Id.*)

AO 72A
(Rev.8/82)

In an affidavit submitted in support of his motion for summary judgment in this action, Campbell asserts that the most salient of the above facts were gathered during his interview with Jackson. (Campbell Aff. [79].) Specifically, Campbell claims that Jackson stated in her interview that "around 11:00 PM on the night before Miller's murder, [plaintiff] visited the apartment where she and Miller were residing." (*Id.* at ¶ 3.) During this visit, according to Campbell, Jackson said that she "heard [plaintiff] tell Miller that he had called his cell phone earlier that day regarding a drug deal that he was planning with two individuals from Alabama." (*Id.*) Campbell contends that Jackson also said that she heard plaintiff tell Miller that he "would pay him (Miller) money for watching his back during this drug deal." (*Id.*)

In response to defendants' motion for summary judgment, plaintiff has submitted an affidavit from Jackson in which she flatly denies (1) overhearing plaintiff and Miller discussing a drug deal or (2) relating this version of events to Campbell. (Jackson Aff. [89] at ¶ 4.) Pointing out at least one obvious inconsistency in Campbell's probable cause affidavit, Jackson states that she and Miller lived in a house, not the apartment referenced by Campbell. (*Id.*)

Defendants have not filed a reply brief directing the Court to any evidence in the record to refute Jackson's affidavit. Neither

have defendants deposed Jackson, although her testimony is central to the claims asserted in this case. Defendants' silence suggests their acknowledgment of a factual dispute that precludes summary judgment.

The Court's own study of the record does reveal a written statement supposedly provided by Jackson and seemingly in accord with some of Campbell's representations to the magistrate. (Statement of Jan. 28, 2008, attached to Statham Dep. [90] at Ex. 1.) To the extent it can be deciphered, the statement indicates that Miller told Jackson that plaintiff would pay him $10,000 for watching his back during a drug deal with two men from Alabama. (*Id.*) This contradicts Campbell's affidavit testimony indicating that Jackson had personal knowledge of the drug deal conversation because she overheard it. (Campbell Aff. [79] at ¶ 3.) In any event, the statement does not conclusively resolve the fabrication issue because it is largely illegible and Jackson's signature of the statement is not visible. (*Id.*) More importantly, defendants never seek to rely on this statement that the Court, on its own, has uncovered. Defendants might have clarified some of those factual questions had they deposed Jackson, but they chose not to do so.

3. Campbell Is Not Entitled To Summary Judgment On The Ground Of Qualified Immunity.

As discussed, qualified immunity protects government officials from liability for conduct that does not violate "clearly established

AO 72A
(Rev.8/82)

statutory or constitutional rights of which a reasonable person would have known." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1157 (11th Cir. 2010). The law can be clearly established by decisions of the United States Supreme Court, the Eleventh Circuit, or the highest court of the state where the case arose. *Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010). To receive qualified immunity, the official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Townsend,* 601 F.3d at 1158. The burden then shifts to plaintiff to show that defendant is not entitled to qualified immunity. *Id.*

Plaintiff does not dispute that defendant Campbell was acting in his discretionary authority when he sought the arrest warrant that is at issue in this case. However, plaintiff has produced evidence that Campbell fabricated the facts necessary to establish probable cause in support of the warrant. (*See* Jackson Aff. [89] and attached to Pl.'s Resp. [85-1].) As noted above, the constitutional prohibition against falsifying incriminating evidence to establish probable cause was clearly established in this Circuit long before Campbell obtained plaintiff's arrest warrant in 2008. *Kingsland*, 382 F.3d at 1232 and *Riley,* 104 F.3d at 1253. Thus, qualified immunity is not available to Campbell on the theory that it was "[un]clear from the preexisting

10

law" whether his conduct violated plaintiff's constitutional rights. *Youmans,* 626 F.3d at 566.

Nevertheless, Campbell might be entitled to qualified immunity if there was arguable probable cause for plaintiff's arrest in the absence of the allegedly fabricated evidence. *See Jones,* 174 F.3d at 1285 (qualified immunity will not shield an officer from liability for false statements that were *necessary* to the probable cause)(emphasis added) and *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990)("probable cause . . . is an absolute bar to a section 1983 action for false arrest"). Arguable probable cause exists when an officer "reasonably could have believed" that there was probable cause "in light of the information the officer possessed." *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003). There is "probable cause" when "'the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Id.* (quoting *Dahl v. Holley,* 312 F.3d 1228, 1233 (11th Cir. 2002)).

The disputed factual issues in this case preclude a determination that arguable probable cause existed, as a matter of law. If the jury finds that Campbell fabricated the material elements of Jackson's statement, the only connection between

plaintiff and Miller relative to the murder is that plaintiff made several phone calls to Miller on the morning of Miller's death. (Campbell Aff. [79] at ¶¶ 3,5.) These phone calls are obviously insufficient to support a finding of arguable probable cause that plaintiff had committed or was committing felony murder. *See* O.C.G.A. § 16-5-1(c) (a person commits felony murder "when, in the commission of a felony, he causes the death of another human being irrespective of malice"). There is no indication from the phone calls that plaintiff was involved in the commission of a felony, or that any such felony resulted in Miller's death.

Of course, the jury might reasonably conclude that Campbell did not fabricate Jackson's statement and that there was arguable probable cause for plaintiff's arrest. *See Kingsland,* 382 F.3d at 1233 ("Because a jury question exists as to whether the defendants constructed evidence upon which to base [the plaintiff's] arrest, the question whether arguable probable cause for the arrest existed is aptly suited for a jury."). Under that scenario, Campbell will be entitled to qualified immunity. But given the conflicting evidence on the fabrication issue, it would be improper to grant qualified immunity to Campbell at this juncture in the case. *Id.* at 1232 (denying qualified immunity where it was "unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented") and *Skop v. City of*

12

*Atlanta*, 485 F.3d 1130, 1143-44 (11th Cir. 2007)(denying qualified immunity where factual issues precluded a determinative ruling on probable cause). Accordingly, defendants' motion for summary judgment [79] on plaintiff's § 1983 claim against Campbell is **DENIED**.

## B. State Law Claims

Campbell argues that plaintiff's state law claims against him are barred by official immunity. (Defs.' Br. [79] at 20-22.) Official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption." *Teston v. Collins*, 217 Ga. App. 829, 830 (1995). Plaintiff does not dispute that Campbell's efforts to obtain the warrant were "discretionary." (Pl.'s Resp. Br. [85].) However, plaintiff contends that there are questions of fact about Campbell's alleged wilful misrepresentations to the magistrate that preclude summary judgment on the ground of official immunity. (*Id.*) The Court agrees.

To overcome official immunity, plaintiff must demonstrate that Campbell acted with "actual malice" or an "actual intent to [cause] harm." *Harvey v. Nichols*, 260 Ga. App. 187, 192 (2003). Generally:

> a malicious act involves all that is usually understood by the term 'wilful,' and is further marked by either hatred or ill will or by such utter recklessness and disregard of the rights of others as denotes a corrupt or malevolent disposition.

*Id. See also White v. Traino*, 244 Ga. App. 208, 211 (2000)("'actual malice' means a deliberate intention to do wrong"). The announcement of an ulterior motive for prosecution raises a strong inference of malice. *See Auld v. Colonial Stores, Inc.*, 76 Ga. App. 329, 337 (1947) and *Fuller v. Jennings*, 213 Ga. App. 773, 776 (1994). A factfinder may also reasonably infer malice from a *total* lack of probable cause. *Lolmaugh v. T.O.C. Retail, Inc.*, 210 Ga. App. 605, 606 (1993)(emphasis in original).

There is evidence in the record that Campbell did not know plaintiff before the murder, and bore him no ill will. (Campbell Dep. [92] at 206-8.) However, plaintiff testified that Campbell treated him disrespectfully during the investigation, and also points out that Assistant District Attorney Statham indicated that the prosecution was without probable cause and possibly motivated by plaintiff's failure to cooperate with Campbell's investigation. (Barnes Dep. [83] at 103 and Statham Memo [90] at Ex. 1.) If plaintiff's version of the events is true, a jury would be authorized to find that plaintiff's arrest was the result of actual malice, because the arrest was totally without probable cause and motivated by plaintiff's refusal to cooperate. Accordingly, questions of fact preclude summary judgment on Campbell's official immunity defense. *See Keenan v. Plouffe*, 267 Ga. 791, 793 (1997)(noting that official immunity is only a question of law when the relevant facts are not in

14

dispute).  Campbell's motion for summary judgment [79] on plaintiff's state law claims is therefore **DENIED**.

**III.  CLAIMS AGAINST DEKALB COUNTY**

    **A.**    **42 U.S.C. § 1983**

There is no *respondeat superior* liability under § 1983. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 642 (1978).  Thus, in order to recover against DeKalb County for his constitutional violations, plaintiff must show that:  (1) the County had a custom or policy that constituted deliberate indifference to his constitutional rights and (2) the custom or policy caused the alleged violations. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  While questions of fact exist regarding the violation of plaintiff's Fourth Amendment rights, plaintiff has failed to identify any DeKalb County custom or policy that was deliberately indifferent to his constitutional rights or causally related to his alleged constitutional violations.

In support of his argument for imposing § 1983 liability on DeKalb County, plaintiff mischaracterizes the County as having a "usual procedure" of charging persons with murder whenever a suspect does not cooperate with homicide detectives.  (Pl.'s Br. [85] at 13-14.)  To the contrary, Assistant District Attorney Stratham testified that it generally was not the practice of the DeKalb County District Attorney's office to charge an individual like plaintiff under the circumstances presented here.  (Statham Dep. [90] at 9-12.)  Under

15

the governing case law, an "isolated incident" does not demonstrate a "persistent" or "widespread" policy upon which municipal liability may be premised. *McDowell,* 329 F.3d at 1290-91. Plaintiff has failed to produce evidence of any DeKalb County custom or policy that caused him injury. The County's motion for summary judgment [79] on plaintiff's § 1983 claim is therefore **GRANTED**.

## B. State Law Claims

DeKalb County argues that it is protected from plaintiff's state law claims by sovereign immunity. Plaintiff does not disagree with that proposition, nor does he point to any potential waiver of sovereign immunity. *See Gilbert v. Richardson*, 264 Ga. 744, 746-47 (1994)(extending sovereign immunity to counties) and O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). DeKalb County's motion for summary judgment [79] as to plaintiff's state law claims is therefore **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [79] is **GRANTED in part** and **DENIED in part**. Summary judgment is **GRANTED** as to defendant DeKalb County, but **DENIED** as to defendant Campbell. Pursuant to this ruling, the Clerk is **DIRECTED** to terminate DeKalb County from this action.

16

SO ORDERED, this 24th day of September, 2012.


                                    /s/ Julie E. Carnes
                                    JULIE E. CARNES
                                    CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)